LOTTINGER, Judge.
This suit arises out of an automobile collision which occurred on Sunday, March 13, 1949, at approximately 4:00 p. m. on U. S. Highway 190, approximately mile west of the Town of Livingston, in the Parish of Livingston. Just prior to the collision, the plaintiffs were riding in their 1947 Chevrolet sedan, being driven by their min- or son, Richard Ward, the said automobile was one of several being escorted in a funeral procession along said highway. The lead car in the funeral procession was a Louisiana State Police Highway Patrol car under the supervision of Troopers Mechana and Batte, of the Louisiana State Police, the second yehicle was the hearse and the third car was that of the widow of the deceased and the fourth car was that of plaintiffs. The procession was traveling easterly, and it is alleged by plaintiffs that the Patrol car escorting and leading said funeral procession had its headlights burning and a large red danger signal flashing and burning, and that the headlights of all the automobiles in said procession were also burning, and that the siren on the said patrol car was being sounded at said time and place; that at said time and place, and while observing due care, it was necessary for the said funeral procession, and your petitioner’s car, to proceed around and pass a certain slow moving vehicle, being driven along the south side of said highway in an *335 easterly direction, by a person whose.name and identity is unknown to your petitioners; that the Police Patrol car, the hearse and the automobile directly behind the hearse, had succeeded in passing the said slow moving vehicle traveling along the south side of said highway, at which time it was necessary and prudent for the automobile owned by your petitioner, A. L. Ward, and operated by his son, Richard Ward, to pass or go around the said slow moving vehicle and did proceed to pass and attempt to go around said vehicle, traveling at a speed not in excess to 30 miles per hour. The petitioners further show that the highway was a paved highway, 18 feet wide and that it was straight for several hundred yards in either direction; that the weather was misty rain. The petitioners then allege that the defendant, Glen Samuels, was driving and operating a 1941 Chevrolet sedan in a westerly direction along said highway at a rate of speed of approximately 60 miles per hour, which speed was unreasonable, considering the inclement weather condition, along said highway at said time and place; that while the said defendant was proceeding along said highway and after being duly warned by the siren, lights and warning signal, on the said Police Patrol car, and being fully aware of the presence of the said funeral .procession, the said defendant drove his automobile to his right, on the north shoulder of said highway, to permit said funeral procession to pass on said highway and go around said slow moving vehicle above described, and as petitioner’s automobile was proceeding around said slow moving vehicle, the defendant suddenly, and without any warning, drove his automobile back onto the paved portion of said highway, into the -path of petitioner’s oncoming automobile, at a high and reckless rate of speed, and struck petitioner’s automobile in a head-on collision, doing damage to the automobile and causing personal injuries to the petitioners. The specific acts of negligence charged to defendant, Glen Samuels, are as follows;
“(1) Operating his said automobile along said highway at an excessive, illegal, and unreasonable rate of speed, in excess of sixty (60) miles per hour, which negligence was the sole-and proximate cause of said accident.
“(2) That the1 said defendant, Glen Sam-uels, failed to slow down on approaching said funeral procession, on a heavily travel-led and. congested highway, and after having been warned of the presence of the said funeral procession, which negligence was the sole and proximate cause of the accident.
“(3) That defendant failed to keep a proper lookout ahead, and failed to see that the car owned by petitioner, A. L. Ward, and driven by Richard Ward, had already started around the said slow moving vehicle, described in the above petition, which negligence was the sole and proximate cause of the accident.
“(4) That defendant, Glen Samuels, failed to have his said automobile Under such control that he could continue to drive said automobile along the shoulder of said highway; that aftér driving said automobile along the shoulder of said highway suddenly, without any warning to the driver of pér titioner’s automobile, cut, or drove said automobile back onto the payed portion of said highway in the face of oncoming traffic, and after he was aware of the fact that petitioner’s automobile was being driven around, and ’was passing the said 'slow moving vehicle, and struck petitioner’s automobile, which negligence was the sole and proximate cause of said accident.
“(5) That the defendant, Glen Samuels, after having driven his said automobile to the North, shoulder of said highway, to permit said funeral procession to pass said slow moving vehicle, failed to apply his brakes, and delay the progress of his said automobile, and allow said funeral procession to pass, which negligency was the sole and proximate cause of said accident.”
Petitioner further alleges that Richard Ward was operating the automobile of petitioner in a careful, prudent manner, with his headlights burning and under the direction and control and instructions of the Louisiana State Highway Police and that the sole and'only cause of the collision was the gross negligence of defendant, Glen Samuels. The suit is against said defend *336 ant, Glen Samuels,: and h:is insurer, and is for damage to the automobile, doctor’s bills paid, by Mr. Ward and for his personal injuries and the personal injuries of Mrs. Ward.
1 The defendants deny that Glen Samuels was guilty of any negligence whatsoever setting forth that he was operating his automobile in a westerly direction on said highway at a reasonable and lawful rate of speed;' that he had his car under complete control, traveling on the right side or right lane of traffic going in a westerly direction; that the collision and accident was caused entirely and solely by the gross and culpable negligence of Richard Ward who was driving the Ward car in an easterly direction on said highway under the guidance, supervision and control of plaintiffs, Mr. and Mrs. A. L. Ward. Defendants in the alternative, in the event that it should be found that Glen Samuels was guilty of negligence in any respect, which he denies, plead that Richard Ward was guilty of contributory negligence, and that such contributory negligence must be imputed to the plaintiffs, since he was driving on a family mission and with their full consent and supervision. The .specific acts of negligence of plaintiffs alleged as follows:
“(1) Failing to keep a proper look-out for' oncoming and approaching traffic when he attempted to pass said car in front of him.
“(•2) In failing to see what he should have seen,'namely, that the car driven by the defendant,' Glen Samuels, was meeting the car driven by the said Richard Ward, .coming from the opposite direction, on the right-hand side of the highway being traveled by the defendant, Glen Samuels in a westerly direction.
“(3) Gross and culpable negligence in driving the Ward car from' the right-hand side of the road going in an easterly direction to the left-hand side without, seeing that the way was clear; and that he had time to go around and'pass the car immediately in front of him.
“(4) Utterly disregarding the approaching automobile, namely, the Glen Samuels car, and driving immediately in front of said car on the wrong side of the highway.
“(5) In violating the law of the road in that the said Richard Ward attempted to pass a car immediately in front of him without regard for the safety of approaching traffic, and without looking to see whether or not there was ample room and time to pass said car immediately in front of him.”
After trial of the case the District Court, for written reasons assigned, found that the collision was caused by the sole negligence of the defendant, Glen Samuels, and accordingly rendered judgment in favor of plaintiff, A, L. Ward, and against the defendant, Glen Samuels, and United States Fidelity & Guaranty Company, jointly and in solido for the sum of $4,114, $3,500 to cover his personal injuries and the remainder for his expenditures for doctors bills and the repair of his automobile, and judgment in favor of Mrs. Ward, against the said' defendants, in the amount of $2,500 for her personal injuries.
The principal question involved in this case is whether or not the finding of fact of the trial judge as follows is correct:
“The evidence is conclusive that the funeral procession was in, the act of passing a slow moving vehicle, which was proceeding in an easterly direction along U. S. Highway 190; that all the cars in the funeral procession', With the exception of two had passed the slow moving vehicle, at the time of the accident; that the headlights of all the automobiles in the funeral procession were on; that the signal warning light was visible on the Police Escort Car, and that the Police Siren was being sounded; that the weather was very inclement, k misty rain falling at the time of the accident.
. “The evidence ig further conclusive that the highway was straight for some several hundred yards, both East and West from the scene of the accident.
“The driver of the Ward automobile was the eighteen year old son of Mr. and Mrs. A. L. Ward, a college student, and who stated that he had been driving some several years.
*337 “The testimony of plaintiffs’ witnesses is that, as the Ward automobile went to pass the slow moving vehicle, above referred to, and had almost passed said vehicle, and while on the North side of the center line of the paved portion of said highway, it was struck by the Samuels automobile, driven by Glen Samuels, which was proceeding in a westerly direction, toward Baton Rouge, Louisiana.
“The testimony of the three State Troopers is that Samuels, after being aware of the presence of the funeral procession, and seeing and observing that said procession was proceeding around said slow moving vehicle, that the said Samuels drove his automobile to his right, or North shoulder of said highway, and before the entire funeral procession had gone around said slow moving vehicle, that the said Samuels cut or drove his automobile back onto the paved portion of said highway in the face of oncoming traffic, which in this instance was the Ward automobile, after he, the said Samuels, 'had yielded the highway to the said funeral procession.
“The court believes from the evidence that Samuels did drive his automobile onto the North shoulder of the said highway, and did yield the North lane of the paved portion of the said highway to the funeral procession, and before the funeral procession had completely passed the slow moving vehicle, either intentionally cut or drove his vehicle back onto the north lane of the paved portion of the said highway, or either lost control of his vehicle to such an extent that it swerved, or in losing control of his vehicle, swerved same back onto the paved portion of the highway rather than let his automobile go into the ditch.
“The Court believes, from the evidence, that the accident was caused by the sole negligence of the defendant, Glen Samuels; that there was no negligence on the part of the driver of the Ward vehicle.
“The Court is well aw"are of the fact that the driver pf a motor vehicle, is under, a duty and obligation on attempting to pass another vehicle going in the same direction, to first ¡ascertain that the. passing can be done in safety. The law.is well established, however, that when a motorist once yields the right of way, or his lane of traffic, to other vehicles on the highway, he is equally responsible, if not more so, to continue to yield said right of way, and not to drive his vehicle back into the face of oncoming traffic. That is exactly what happened in this case, for the reason that several vehicles of the , funeral procession had passed the slow moving vehicle without colliding with defendant Samuel’s automobile, which must have been on the north shoulder of said 'highway, in order to prevent a collision with other automobiles of the funeral procession. , •
“The Court believes that without observing or keeping a proper lookout, and without -first determining that the entire funeral procession had passed, and being well aware that it was a funeral procession, that Sam-uels cut his vehicle' back into the north lane and paved portion of said highway, and struck the Ward automobile. This is further borne out by the fact that only the left side of both the Ward and Samuels vehicles were damaged, if the Samuels vehicle had been proceeding down the North side of the paved portion of said highway, there would have resulted a straight headon collision. This did not occur, which conclusively proves that the Samuels vehicle was on the north shoulder of the highway, and' was being cut partially back onto the paved portion of the highway at the time of the accident.”
The two important points which may be erroneous in said findings of fact of the trial judge are: ■
“(1) Does the evidence preponderate to the, effect that the police siren had been sounded and that the defendant, Glen Sam-uels, had in fact pulled over to th.e right shoulder and yielded the right-of-way, while .traveling weste.rly as found by the trial •judge, and
“(2); Can it, be s,aid-that the driver of the Ward car .was free of any negligence contributing to the accident.”
. With reference .to the first point, Glen Samuel’s testimony is. that he was traveling westerly and “Just as I got to the West edge of Livingston a ’37 Plymouth passed me. I noticed a red light but I didn’t hear *338 no siren. I did not pull off of the shoulder of the road and was not off the road at any time. I noticed cars passing1. A car had just passed another car when the Ward car pulled out approximately 10 or 15 feet of me and we hit.” He testified further that he was driving at about 25 or 30 miles per hour. He testifies further that 'he was driving with his parking lights. The following is a pertinent-part of his testimony:
“Q. Did you see any of the cars go around the slow moving car before the Ward Car? A. Yes, one just finished pulling in.
“Q. Just pulling into what? A. Into the south lane.
“Q. What was the next car? A. The Ward car.”
He further states that when he saw the police car -and the hearse they were already on the south lane headed east. In other words his testimony is clearly to the effect that he was driving on his side of the concrete slab and that the only oncorhing car that he could see was the car immediately ahead of the Ward car. It may be noted here that the car ahead of the Ward car was that of the deceased’s widow and sister of plaintiff, Ward, and that she did not testify in the case.
The testimony of Mrs. Glen Samuels is that she was sitting on the front seat with her husband and as follows:
“Q. Will you state exactly what you saw with reference to this accident that occurred on that date? A. Well, I was watching, like Mrs. Ward said I do part of the driving too, we saw this red light on the police car coming and started going slower than what we were and there was one car come out and went -back in the line on the left side and then the road was clear ■and then seemed like all of a sudden two yellow lights came right at us and hit us.”
Like her husband she is positive that the Samuels car was not off of the pavement at any time prior to the accident and that no siren was blown prior to the accident. Like her husband she also states that they did not know they were meeting a funeral procession.
Miss Doris Juanita Murett testified that she was riding in the rear of the Samuel’s car and she too states that the Samuel’s car was never off of the pavement until after the accident had occurred and that she did not hear the blowing of the siren. She states that when Mr. Samuels was confronted by the Ward car “He applied his brakes and tried to pull off the North side of the highway.”
Mr. Knight, the driver of the hearse, testified that he was driving approximately 60 feet behind the police patrol car. He too denies that any siren was blowing to his knowledge. The following questions to and answers by Mr. Knight are significant:
“Q. Did you observe the Samuels car? A. Yes.
“Q. Was it traveling on its right hand side of the highway? A. Yes,, when I saw it.
“Q. Did you see that car at any time on the shoulder before the collision? A. No.
“Q. When you passed that car, or that car passed you, it was on the pavement traveling on its right hand side ? A. Yes.
“Q. And if it 'had been on the shoulder you would have noticed it? A. When it passed me it could have been off and come back on. When I saw it it was on my left which would be his right.”
Upon being questioned by the Court, Mr. Knight testified that the police car and his hearse had just passed a slow moving car going in the samé direction and that as far as he knows the cars to the rear were attempting to pass the slow moving car also.
The trial judge appparently disregarded the testimony of Mr. and Mrs. -Samuels, of their guest, Miss Murett, and of Mr. Knight, the driver of the hearse, and based his finding on the testimony of the three State Troopers, Mechana, Batte and Foster. Trooper Mechana testified as follows:
“Q. Tell the 'Court in your own words, if you know, the speed, position and location — describe in full what you know from the time you first saw Samuel’s car until after the accident was over? A. We passed á car and then we passed a second car which was Trooper Foster. The car *339 behind Trooper Foster cut off of the highway and so did Trooper Foster. There was a third car .that didn’t pull off of the highway. We had passed these two cars, including Trooper Foster’s, and there was an oncoming car heading West which was this gentleman’s, here, Mr. Samuel’s car, and we had our light and siren going and we motioned him off of the highway and he pulled off and we passed him and right following that was the accident and we turned around and noticed the accident and we stopped and assisted them.
“Q. Do you know whether or not the Samuel’s car took off the pavement onto the shoulder at all? A. He did.
“Q. Did you see him do that ? A. I saw him leave the highway, partially — maybe not all the way.”
Trooper Batte testified as follows:
“Q. Tell the Court in your own words just how this accident happened and the cause of it, if you know ánd you can use your report there. A. We had been behind a car. This procession was on the way from Baton Rouge. On account of the weather w,e had not drove over 30 or 35 miles and we were behind three cars and when we blew the siren for them to pull over, one car pulled over and then I noticed the other car was Trooper Foster and he pulled over immediately to let the procession pass. This other slow car was there and as I started to pull around I motioned for our cars to come around and Trooper Mechana was working the signal light and all of our procession pulled over and we started around the slow car. I noticed a 1937 or 1938 Chevrolet come around this curve and looked to me like it was making exceptional good time. When he heard the siren and the light he pulled off on the shoulder and I am looking in the mirror to see how my procession is going to get by this and I tell Mechana everything is pass but this last car—
“Q. What car? A. The Chevrolet.
“Q. The Samuels’ car? A. Yes. He pulled partly back on the highway and was slipping sideways and I said we got us a wreck on the back end of our procession, so we pulled off on the right to assist them and get the people out that were hurt and take them to the hospital in Hammond.
“Q. What is your opinion as a Trooper and Sergeant the cause of this accident? A. I think if this man would have stayed off of the road like he pulled off at first—
“Q. You mean until the funeral proces-. sion had passed? A. Until the procession had passed.
“Q. Did you have your police patrol lights on? A. Had the lights on and was blowing the siren.”
Trooper Foster testified that he was pa-troling east when he noticed 'in his rear-view mirror the police car coming with the red light and that he pulled to the south shoulder. He is positive that he heard the siren on the police car; that as the police car passed him, Sergeant Batte stopped his car and said “We got a wreck” and that he thereupon turned around and went there and worked it. With reference to the Samuel’s car he states that he passed right after the state car and the hearse had passed him going West and traveling abput 30 or 40 miles. He further states “Part of his car was evidently on the shoulder, because the state car and the hearse was in' the center of the road when they passed me, but they were cutting back on the right side.” His testimony appears to be that from his impression, while parked on the south shoulder, Samuels must necessarily have been partly on the shoulder and it is not exactly in line with the testimony of the other-troopers that 'he had definitely gotten on the shoulder upon the approach of .the police car.
We further find in the record where John Ward, a witness for plaintiff and one of the-occupants in the funeral procession, stated, in answer to a direct question that he did not. hear the siren. We further find in.the record where the plaintiff, A. L. Ward,- in-answer to a direct question, stated that he-did not hear the siren.
. It is obvious from the above that there is. a serious conflict in the testimony and we doubt that the evidence preponderates to the-effect that Samuels got off of the pavement and granted the right of way as claimed.. We are impressed particularly by the tes-_ *340 tirnony of: Mr. Knight; which is in direct conflict to that of the State Troopers. Moreover, the circumstances that it was misty rain, visibility was poor and that the shoulders were wet and soft,' further indicate to us that Samuels probably did not get off the pavement and also did not realize that this procession of four automobiles was a funeral procession, as he and his wife testified.
We are further impressed with the testimony of Mr. Knight, John Ward and the plaintiff, A. L. Ward, to the effect that they did not 'hear the police siren. It appears further that all of the occupants of the Samuels’ car did not hear a siren. ■ It is testified by one of the state police that the type of siren used on the car in this procession was such that if it had been sounded it could have been heard for a quarter of a mile to a half a mile away. It appears to us that if , the siren had been sounded that some one in the procession would have heard it besides the state police. It is only reasonable to believe that if the siren had been sounded that it could have been heard by other parties in the procession. It is only reasonable to believe that if the siren had 'been sounded that Mr. Knight, the driver of the hearse, would have certainly heard it because he was only some 60 feet behind the police car and it is likewise reasonable to believe that if the siren had been sounded the occupants of the Ward car, which was the fourth car in the procession, would have likewise heard the siren. From the above, we are therefore inclined to believe that the evidence preponderates to the effect that the siren was not sounded and that the Samuels car had not pulled over to the right shoulder and granted the right-of-way of passage to the funeral procession to pass the slow moving vehicle. We are, therefore, inclined to believe that the 'police had not waved Samuels down to the extent of giving the procession the right-of-way to pass the slow moving car, that is, to occupy the northern 'half of the paved road, but we are inclined1 to believe that Samuels slowed down when he saw the police car with its red light blinking and proceeded along the northern half of the paved slab which was on his right side of the road proceeding west and that when he saw plaintiff’s car attempting to go around the slow moving vehicle and to avoid an accident, he puiled to the right and partly off of the paved slab.
The trial judge was apparently impressed by the physical facts which show that the left front of the Samuels automobile collided with the left front of the Ward automobile, which could indicate that the Sam-uels automobile was traveling partly on the shoulder, since the collision was not in the center of the paved slab. However, it must be remembered that Samuels and his wife testified that immediately prior to the collision that Samuels cut to his right in order to try to avoid the collision.
In view of the fact that the evidence preponderates to the effect that the siren was not sounded and that Samuels did not pull over to the right shoulder and grant the right-of-way of passage to the funeral procession, the duty was then imposed upon the driver of plaintiff’s car to look ahead and observe for oncoming traffic before he attempted to pass the slow moving vehicle. The testimony of Richard Ward, the driver of plaintiff’s vehicle and that of plaintiff, A. L. Ward, and the other plaintiff, Mrs. Ward, convinces us that just as soon as the vehicle immediately in front of them had pulled over to pass the slow moving vehicle that they themselves just blindly followed the leader without first looking and observing to. see that the coast was clear. Richard Ward states that “We was coming in a funeral procession from Baton Rpuge to Hammond and I pulled around this car that was moving slow and there wasn’t a car coming down on the north side coming west. After I got about half way around, Mr. Samuels’ car, the car in front of me pulled and we collided.” He further states that the Samuels’ car was off on the shoulder and part on the cement and he further states that “The car ahead of me pulled in real quick and of course when they pulled in there Samuels’ car was. The car ahead of me just did miss Samuels’ car.” It appears that the car in the procession immediately in front of plaintiff’s car evidently shielded the oncoming traffic on the north half of the paved road and for that reason, plaintiffs could not see the oncoming car *341 until the car that was in the procession immediately ahead of them'had cleared'the slow moving vehicle. It appears further from the record that just as the plaintiff’s car was about half way around the slow moving vehicle that Samuels’ car was about 15 feet ahead of them. Since the evidence preponderates to the effect that the police siren had not been sounded and that the Samuels’ car had not pulled off of the paved road and granted the right-of-way to the funeral procession as alleged, we therefore conclude that the proximate cause of the accident is due to the negligence of the driver of plaintiff’s car in attempting to pass and go around the slow moving vehicle without first ascertaining whether or not the road was clear. It appears that the only way in which the plaintiff’s driver can be relieved of his duty and obligation to- observe and see if there was any oncoming traffic before he attempted to pass the slow moving vehicle, is if he had been granted the right-of-way by the state police and/or the defendant and this information or knowledge or notice to that effect 'had been imparted to the plaintiff’s driver. The record is absolutely devoid of any testimony to the effect that Richard Ward, the driver of plaintiff’s vehicle, had any knowledge or notice whatsoever that the siren had been sounded and that the state police had granted a right-of-way for them to pass the slow moving vehicle. The record is likewise devoid of any testimony to the effect that Richard Ward, the driver of plaintiff’s vehicle, had any knowledge or notice whatsoever that the Samuels’ car had pulled off of the paved road and onto the shoulder and had granted the right-of-way for them to pass the slow moving vehicle as is contended. We find no negligence on the part of the defendant in this case and for that reason believe that the plaintiff’s driver just 'blindly followed the car in front of him in attempting to pass the slow moving vehicle, assuming that his coast was clear.
Therefore, for the above .and foregoing reasons, the judgment appealed ■ from is annulled, avoided -and reversed and plaintiff’s suit dismissed at plaintiff’s cost.
Judgment reversed.